UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROSA CHAVEZ, aka ROSA MARTINEZ,        )        No. EDCV 08-1431-RC
                                       )
            Plaintiff,                 )
                                       )        OPINION AND ORDER
       v.                              )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )
_____)

     Plaintiff Rosa Chavez, aka Rosa Martinez, filed a complaint on
October 21, 2008, seeking review of the Commissioner's decision
denying her application for disability benefits.  On March 24, 2009,
the Commissioner answered the complaint, and the parties filed a joint
stipulation on May 6, 2009.


//

//

//

**BACKGROUND**

I

This case has a lengthy history, as the ALJ set forth:

This matter originally stems from the claimant's April 8,
1993 applications for a period of disability, disability
insurance benefits, and supplemental security income.  The
[plaintiff] was found disabled effective September 1992 due to
polysubstance abuse.  The [plaintiff's] benefits were ceased
effective January 1, 1997, when Public Law 104-121 was
effectuated, and benefits were no longer paid to claimants who
had a drug or alcohol disorder that was a contributing factor
material to a finding of disability.  The [plaintiff] filed a
request for a hearing; however, the request for hearing was
dismissed on May 16, 1997, when the [plaintiff] failed to appear
for the scheduled hearing.  The Appeals Council remanded the
case; and on April 28, 1998, the [plaintiff's] request for
hearing was dismissed again based on abandonment after she failed
to reply or to provide the names of treating sources as
requested.  On May 13, 1999, the Appeals Council remanded the
matter because the [plaintiff] advised she had moved to Chicago
and had provided information about the change of address to the
administration.  A hearing was subsequently held before an
administrative law judge in Chicago, Illinois; and on January 28,
2000, the judge issued an unfavorable decision.  The [plaintiff]
was found to have "severe" impairments consisting of
osteoarthritis and allied disorders and an affective disorder,
which did not meet or equal any listed impairment, and which did

2

not preclude light exertion with limitations to simple work tasks.   [¶]   The [plaintiff] appealed the January 28, 2000 unfavorable decision, and on March 14, 2000, the [plaintiff] filed her second application for a period of disability and disability benefits.   On May 3, 2000, the [plaintiff] filed an application for supplemental security income.   The [plaintiff's] subsequent applications were denied at the hearing level by Administrative Law Judge Jacqueline Drucker on May 22, 2003.

\*   \*   \*

The [plaintiff] appealed the second unfavorable decision, and on June 10, 2004, the Appeals Council remanded the January 28, 2000 and May 22, 2003 unfavorable decisions with . . . instructions. . . .   [¶]   While the above matters were pending, the [plaintiff] filed new Title II and Title XVI applications on November 13, 2003.   Those applications were consolidated with the prior applications when the Appeals Council remanded the aforementioned decisions.   [¶]   After due notice, a hearing was held before [Administrative Law Judge Jay E. Levine ("ALJ")] on October 7, 2004 in San Bernardino, California. . . .   [¶]   On December 21, 2004, [the ALJ] issued an unfavorable decision. . . .   [¶]   Once again, the [plaintiff] appealed the unfavorable decision, and once again, the Appeals Council remanded the December 21, 2004 decision . . . with . . . instructions. . . .

Certified Administrative Record ("A.R.") 20-21.

//

3

1    On April 11, 2007, the ALJ conducted another administrative

2  hearing, A.R. 1534-69, and on June 19, 2007, he issued a decision

3  again finding plaintiff is not disabled.  A.R. 17-39.  The plaintiff

4  requested review from the Appeals Council, and on September 5, 2008,

5  the Appeals Council denied review.  A. R. 13-16.

6

7                              II

8    The plaintiff, who was born on March 26, 1953, is currently 56

9  years old.  A.R. 83.  She has a general equivalency degree and a

10  secretarial science certificate, and has previously worked as a

11  receptionist, a sales clerk, an advocate, a data entry clerk, a night

12  counselor, and a motel clerk.  A.R. 120-25, 130, 1566.

13

14                          **DISCUSSION**

15                              III

16    The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

17  review the Commissioner's decision denying plaintiff disability

18  benefits to determine if his findings are supported by substantial

19  evidence and whether the Commissioner used the proper legal standards

20  in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th

21  Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

22  "In determining whether the Commissioner's findings are supported by

23  substantial evidence, [this Court] must review the administrative

24  record as a whole, weighing both the evidence that supports and the

25  evidence that detracts from the Commissioner's conclusion."  Reddick

26  v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,

27  246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can

28  reasonably support either affirming or reversing the decision, [this

                               4

1  Court] may not substitute [its] judgment for that of the

2  Commissioner." <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007),

3  128 S. Ct. 1068 (2008); <u>Vasquez</u>, 572 F.3d at 591.

4

5      The claimant is "disabled" for the purpose of receiving benefits

6  under the Social Security Act ("Act") if she is unable to engage in

7  any substantial gainful activity due to an impairment which has

8  lasted, or is expected to last, for a continuous period of at least

9  twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

10 §§ 404.1505(a), 416.905(a).  "The claimant bears the burden of

11 establishing a prima facie case of disability."  <u>Roberts v. Shalala</u>,

12 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996);

13 <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996); <u>see also</u>

14 <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th Cir.

15 2009) ("To establish eligibility for Social Security benefits, a

16 claimant has the burden to prove he is disabled.").

17

18     The Commissioner has promulgated regulations establishing a

19 five-step sequential evaluation process for the ALJ to follow in a

20 disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

21 the ALJ must determine whether the claimant is currently engaged in

22 substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

23 If not, in the **Second Step**, the ALJ must determine whether the

24 claimant has a severe impairment or combination of impairments

25 significantly limiting her from performing basic work activities.  20

26 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ

27 must determine whether the claimant has an impairment or combination

28 of impairments that meets or equals the requirements of the Listing of

Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20
C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the
ALJ must determine whether the claimant has sufficient residual
functional capacity despite the impairment or various limitations to
perform her past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,
in **Step Five**, the burden shifts to the Commissioner to show the
claimant can perform other work that exists in significant numbers in
the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).
Moreover, where there is evidence of a mental impairment that may
prevent a claimant from working, the Commissioner has supplemented the
five-step sequential evaluation process with additional regulations
addressing mental impairments.[1]  Maier v. Comm'r of the Soc. Sec.
Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

    However, "[a] finding of 'disabled' under the five-step inquiry
does not automatically qualify a claimant for disability benefits."

---

    [1]  First, the ALJ must determine the presence or absence of
certain medical findings relevant to the ability to work.  20
C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the
claimant establishes these medical findings, the ALJ must rate
the degree of functional loss resulting from the impairment by
considering four areas of function: (a) activities of daily
living; (b) social functioning; (c) concentration, persistence,
or pace; and (d) episodes of decompensation.  20 C.F.R. §§
404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the
degree of loss, the ALJ must determine whether the claimant has a
severe mental impairment.  20 C.F.R. §§ 404.1520a(d),
416.920a(d).  Fourth, when a mental impairment is found to be
severe, the ALJ must determine if it meets or equals a Listing.
20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a
Listing is not met, the ALJ must then perform a residual
functional capacity assessment, and the ALJ's decision "must
incorporate the pertinent findings and conclusions" regarding
plaintiff's mental impairment, including "a specific finding as
to the degree of limitation in each of the functional areas
described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]."  20 C.F.R.
§§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

1  Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); Parra, 481

2  F.3d at 746.  Rather, the Act provides that "[a]n individual shall not

3  be considered disabled . . . if alcoholism or drug addiction would

4  . . . be a contributing factor material to the Commissioner's

5  determination that the individual is disabled."  42 U.S.C.

6  § 423(d)(2)(C).

7

8      For claimants such as plaintiff, who have substance abuse

9  dependency, the ALJ "must first conduct the five-step inquiry without

10 separating out the impact of alcoholism or drug addiction.  If the ALJ

11 finds that the claimant is not disabled under the five-step inquiry,

12 then the claimant is not entitled to benefits and there is no need to

13 proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935."

14 Bustamante, 262 F.3d at 955 (citations omitted); see also Brueggemann

15 v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003) ("The plain text of the

16 relevant regulation requires the ALJ first to determine whether [the

17 claimant] is disabled . . . without segregating out any effects that

18 might be due to substance use disorders. . . ." (citations and

19 footnote omitted)); Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th

20 Cir. 2001) ("The implementing regulations make clear that a finding

21 of disability is a condition precedent to an application of

22 § 423(d)(2)(C).  The [ALJ] must first make a determination that the

23 claimant is disabled." (citation omitted)).  Then the ALJ "must

24 determine whether [the claimant's] drug addiction or alcoholism is a

25 contributing factor material to the determination of disability."[2]  20

26

27     [2]  "The 'key factor . . . in determining whether drug
   addiction or alcoholism is a contributing factor material to the
28 determination of disability' is whether an individual would still
   be found disabled if [he] stopped using alcohol or drugs."  Sousa

7

C.F.R. §§ 404.1535(a), 416.935(a); see also Brueggemann, 348 F.3d at 694-95 ("If the gross total of a claimant's limitations, including the effect of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); Drapeau, 255 F.3d at 1214 ("[The ALJ] must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol [or drugs].").

Applying the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has the severe impairments of hypertension, hepatitis C, a dysthymic disorder and recurrent polysubstance abuse (heroin) disorder (Step Two); however, plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (Step Three). Next, the ALJ determined plaintiff can perform her past relevant work as a data entry clerk.[3] (Step Four). Finally, the ALJ concluded plaintiff could perform a significant number of jobs in the national economy; therefore, she is not disabled. (Step Five).

---

v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998) (citation omitted); 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

[3]   In an apparent typographical error, the ALJ found, at Step Four, that plaintiff "is unable to perform any past relevant work" (Finding no. 6); however, he then stated he "accept[s] and adopt[s] the testimony of the vocational expert," who testified plaintiff can "perform her past relevant work as a data entry clerk." A.R. 37.  The ALJ also found at Step Five that plaintiff can perform other work in the national economy.  Thus, this typographical error does not affect the Court's analysis.

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who do meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities.").  Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to

1 | supervision, co-workers and usual work situations, and dealing with
2 | changes in a routine work setting.   20 C.F.R. §§ 404.1521(b),
3 | 416.921(b); Webb, 433 F.3d at 686.   If the claimant meets her burden
4 | of demonstrating she suffers from an impairment affecting her ability
5 | to perform basic work activities, "the ALJ *must* find that the
6 | impairment is 'severe' and move to the next step in the SSA's
7 | five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th
8 | Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.

10 |     On March 1, 2004, Rocely Ella-Tamayo, M.D., examined plaintiff
11 | and diagnosed her with hypertension, past heroin abuse with a history
12 | of hepatitis C, chronic nicotine abuse, a history of chronic pain
13 | syndrome, and obesity.[4]  A.R. 1295-1300.   Dr. Ella-Tamayo opined:

15 |     [plaintiff] is restricted in pushing, pulling, lifting, and
16 |     carrying to about 50 pounds occasionally, and about 25
17 |     pounds frequently.  Sitting is unrestricted.  In terms of
18 |     standing and walking, the [plaintiff] is able to stand and
19 |     walk 6 hours out of an 8-hour workday with normal breaks.
20 |     ***She is able to kneel and squat only occasionally because of***
21 |     ***her obesity.***  There is no functional impairment observed in
22 |     both hands.

24 | A.R. 1300 (emphasis added).

26 | _____
27 |     [4]  Dr. Ella-Tamayo found plaintiff was 61" tall and weighed
      194 pounds.  A.R. 1297.  At her most recent administrative
      hearing, plaintiff described herself as weighing 240 pounds and
28 | "morbid[ly] obese."  A.R. 1564.

1   Based solely on Dr. Ella-Tamayo's opinion, plaintiff contends the

2   ALJ erred in not finding obesity to be a severe condition.   Jt. Stip.

3   at 10:22-14:4, 15:18-23.   There is no merit to this claim.   Even

4   assuming *arguendo* plaintiff's obesity constitutes a severe impairment,

5   the ALJ, as discussed below, included all the limitations Dr. Ella-

6   Tamayo found in plaintiff's residual functional capacity ("RFC") and

7   in the hypothetical question to the vocational expert.[5]   A.R. 25,

8   1300, 1566-67.   Therefore, any error was harmless.   See Tommasetti v.

9   Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not

10  reverse an ALJ's decision for harmless error, which exists when it is

11  clear from the record that the ALJ's error was inconsequential to the

12  ultimate nondisability determination."   (citations and internal

13  quotation marks omitted)); Burch v. Barnhart, 400 F.3d 676, 682-84

14  (9th Cir. 2005) (Even if the ALJ should have addressed the claimant's

15  obesity, his failure to do so was harmless error when the claimant,

16  who has been represented by counsel since the administrative hearing,

17  "has not set forth, and there is no evidence in the record, of any

18  functional limitations as a result of her obesity that the ALJ failed

19  to consider.").

20

21  _____

22      [5]   In assessing plaintiff's RFC, the ALJ, in accordance with
Social Security terminology, see, e.g., SSR 85-15, 1985 WL 56857,
23  *7 (S.S.A.), used the term "crouch" rather than "squat."   A.R.
25, 1566.   However, this is inconsequential since the terms are
24  essentially synonymous.   See, e.g., Merriam-Webster's Collegiate
Dictionary, 1138 (10th ed. 2002) (defining "squat" as "to cause
25  (oneself) to crouch or sit on the ground"); Filimoshyna v.
Astrue, 2009 WL 3627946, *8 (E.D. Cal.) ("Squatting is most
26  similar to the term 'crouching' as used in the [Social Security]
rulings."); Stewart v. Astrue, 2009 WL 537538, *18 (W.D. Mo.)
27  ("'Squat'" means "'to sit in a low or crouching position with the
legs drawn up closely beneath or in front of the body.'"
28  (citation omitted)).

**V**

A claimant's RFC is what she can still do despite her physical, mental, nonexertional, and other limitations.  Mayes, 276 F.3d at 460; see also Valentine, 574 F.3d at 689 (The RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift).").  Here, the ALJ found plaintiff "has the residual functional capacity to perform [limited] light work."[6]  A.R. 25.  In particular the ALJ concluded:

> The [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk for 6 hours out of an 8-hour work day.  She can sit for unrestricted periods of time.  She is precluded from work at unprotected heights or with dangerous machinery.  She can occasionally climb, balance, stoop, kneel, crouch, and crawl.  She is limited to working with things rather than people.

Id.  However, plaintiff claims the ALJ failed to properly consider the opinions of his treating psychiatrist, Dr. Maria Salanga, and non-examining psychiatrist, Dr. David Gross, in making this RFC

---

[6]  Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

1 | determination.   There is no merit to these contentions.

2

3 | **A.   Dr. Salanga:**

4 | The medical opinions of treating physicians are entitled to

5 | special weight because the treating physician "is employed to cure and

6 | has a greater opportunity to know and observe the patient as an

7 | individual." Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

8 | Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

9 | 1999).   Therefore, the ALJ must provide clear and convincing reasons

10 | for rejecting the uncontroverted opinion of a treating physician,

11 | Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008);

12 | Reddick, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion

13 | is contradicted by another doctor, the ALJ may not reject this opinion

14 | without providing 'specific and legitimate reasons' supported by

15 | substantial evidence in the record." Reddick, 157 F.3d at 725;

16 | Valentine, 574 F.3d at 692.

17

18 | On July 28, 2003, Maria T. Salanga, M.D., examined plaintiff,

19 | diagnosed her as having a bipolar-type schizoaffective disorder and a

20 | severe recurrent major depressive disorder with psychotic features,

21 | and determined plaintiff's Global Assessment of Functioning ("GAF")

22 | was 45.[7] A.R. 1255-58.   Dr. Salanga found plaintiff was depressed and

23 | tearful, and had auditory hallucinations and poor cognitive

24

25 | [7] A GAF of 45 means that the plaintiff exhibits "[s]erious
symptoms (e.g., suicidal ideation, severe obsessional rituals,
26 | frequent shoplifting) or any serious impairment in social,
occupational, or school functioning (e.g. no friends, unable to
27 | keep a job)." American Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders, 34 (4th ed. (Text
28 | Revision) 2000).

functioning, although she was alert and oriented.  A.R. 1257.  On

June 3, 2004, Dr. Salanga reevaluated plaintiff, diagnosed her with a

recurrent and severe major depressive disorder with psychotic

features, and determined plaintiff's GAF was 45.  A.R. 1387-88.  Dr.

Salanga noted plaintiff was depressed, had auditory and visual

hallucinations, her thought content was "paranoid/persecutory," her

insight and judgment were "poor," her immediate memory was poor and

she was not oriented to person, place, time and situation; however,

her appearance, behavior, speech and thought process were within

normal limits.  A.R. 1388.


        At Step Two, the ALJ found plaintiff has a severe mental

impairment that limits her to working with things, rather than people.

A.R. 25.  However, plaintiff claims this finding is not supported by

substantial evidence because the ALJ did not properly consider Dr.

Salanga's medical opinion that plaintiff's GAF was 45.  The Court

disagrees.  First, an ALJ is not required to give controlling weight

to a treating physician's GAF score; indeed, an ALJ's failure to

mention a GAF score does not render his assessment of a claimant's RFC

deficient.  See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th

Cir. 2002) ("While a GAF score may be of considerable help to the ALJ

in formulating the RFC, it is not essential to the RFC's accuracy.

Thus, the ALJ's failure to reference the GAF score in the RFC,

standing alone, does not make the RFC inaccurate."); Petree v. Astrue,

260 Fed. Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A]

low GAF score does not alone determine disability, but is instead a

piece of evidence to be considered with the rest of the record.");

Ramos v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa. 2003)

1  ("Clinicians use a GAF scale to identify an individuals' [sic] overall

2  level of functioning, and a lower score 'may indicate problems that do

3  not necessarily relate to the ability to hold a job.'"  (citation

4  omitted)); Baker v. Astrue, 2009 WL 279085, *3 (C.D. Cal.) ("In

5  evaluating the severity of a claimant's mental impairments, a GAF

6  score may help guide the ALJ's determination, but an ALJ is not bound

7  to consider it."); Florence v. Astrue, 2009 WL 1916397, *6 (C.D. Cal.)

8  ("[W]ithout more, the ALJ's assessment of the medical record is not

9  deficient solely because it does not reference a particular GAF

10  score."); 65 Fed. Reg. 50746, 50764-65 ("The GAF scale . . . does not

11  have a direct correlation to the severity requirements in our mental

12  disorder listings.").

13

14      Second, and more importantly, the ALJ did consider Dr. Salanga's

15  GAF determinations, but found they were not "entitled to significant

16  weight" because "there is really no evidence to indicate the

17  reliability of cross raters where a particular GAF score means a

18  particular limitation in work ability or work capacity."  A.R. 33.

19  This is a specific and legitimate reason for rejecting Dr. Salanga's

20  GAF determinations, see, e.g., Borrie v. Astrue, 2009 WL 2579497, *2

21  (C.D. Cal.) ("[T]he ALJ considered the GAF score, but finding such

22  scores unreliable, did not find it mandated disability.  This is a

23  specific and legitimate reason for discounting the score."); Taylor v.

24  Astrue, 2009 WL 4349553, *5 (C.D. Cal.) (same), and since Dr. Salanga

25  did not set forth any functional limitations or otherwise comment on

26  plaintiff's ability to work, the ALJ did not err.  Valentine, 574 F.3d

27  at 691.

28  //

**B.   Dr. Gross:**

"The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa, 143 F.3d at 1244.  However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions."  S.S.R. 96-6p, 1996 WL 374180, *2 (S.S.A.);[8] see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.   Therefore, administrative law judges must consider find-ings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . .");  Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").

On March 22, 2004, nonexamining psychiatrist David E. Gross, M.D., opined plaintiff is moderately limited in her ability to perform

---

[8]   Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations.   Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).   Social Security Rulings do not have the force of law, Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996); nevertheless, once published, they are binding upon ALJs and the Commissioner.   Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001); Gatliff v. Comm'r of the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

various mental activities, including understanding, remembering and
carrying out detailed instructions, and interacting appropriately with
the general public.  A.R. 1317-19, 1322.  Dr. Gross summarized
plaintiff's limitations by concluding plaintiff can remember short and
simple instructions, can perform simple repetitive tasks for a full
workday and workweek, and can work with peers and supervisors, but not
the public.  A.R. 1319.

    Plaintiff claims the ALJ erred in not considering Dr. Gross'
opinion is determining plaintiff's RFC.  There is no basis for this
claim since it is clear that the ALJ did consider Dr. Gross' opinion,
see A.R. 22, 72,[9] concluding that it was accordance with his RFC
determination restricting plaintiff to "working with things rather
than people."  A.R. 22-23, 72, 74.  Thus, the ALJ's RFC assessment
incorporated Dr. Gross' conclusion that plaintiff should not work with
the public.  To the extent the RFC assessment did not incorporate Dr.
Gross' opinion that plaintiff is limited to simple repetitive tasks,
any such error was harmless since, as set forth below, the vocational
expert testified that even if plaintiff was limited to simple
repetitive tasks, she could still work as an office helper or small

---

[9]  Specifically, the ALJ incorporated by reference his prior
decision of December 21, 2004, which discussed Dr. Gross'
opinion, and such incorporation is permissible.  See, e.g., Dixon
v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001) ("Although
[ALJ] Kelly did not specifically address Dr. Dawson's opinion,
she incorporated by reference ALJ Bernoski's discussions of the
medical evidence."); Banks v. Barnhart, 434 F. Supp. 2d 800, 805
n. 10 (C.D. Cal. 2006) ("The ALJ made no Step Three finding on
remand, but he incorporated by reference his earlier opinion in
which he found plaintiff's condition does not meet or equal a
listed impairment.").

1 | products assembler II.[10]   A.R. 1567-68; <u>Tommasetti</u>, 533 F.3d at 1038;

2 | <u>Burch</u>, 400 F.3d at 682-84.

3

4 | **V**

5 |     At Step Five, the burden shifts to the Commissioner to show the

6 | claimant can perform other jobs that exist in the national economy.

7 | <u>Bray v. Astrue</u>, 554 F.3d 1219, 1222 (9th Cir. 2009); <u>Hoopai v. Astrue</u>,

8 | 499 F.3d 1071, 1074-75 (9th Cir. 2007).   There are two ways for the

9 | Commissioner to meet this burden: "(1) by the testimony of a

10

11 |         [10]   The Dictionary of Occupational Titles ("DOT"), which is
the Commissioner's primary source of reliable vocational
12 | information, <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 n.6 (9th Cir.
1995); <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990),
13 | identifies the office helper (DOT no. 239.567-010) and small
products assembler II (DOT no. 739.687-030) positions as having
14 | reasoning levels of "2," meaning these jobs require an employee
to "[a]pply commonsense [sic] understanding to carry out detailed
15 | but uninvolved written or oral instructions" and "[d]eal with
problems involving a few concrete variables in or from
16 | standardized situations."   U.S. Dep't of Labor, <u>Dictionary of
Occupational Titles</u>, 210, 772, 1011 (4th ed. 1991).   The
17 | vocational expert also testified that plaintiff could work as a
cleaner in housekeeping (DOT no. 323.687-014), A.R. 1567, a job
18 | that has a reasoning level of "1," meaning an employee is
required to "[a]pply commonsense [sic] understanding to carry out
19 | simple one- or two-step instructions" and "[d]eal with
standardized situations with occasional or no variables in or
20 | from these situations encountered on the job." <u>Dictionary of
Occupational Titles</u> at 248, 1011.   Either of these reasoning
21 | levels is consistent with a limitation to simple repetitive
tasks.   See <u>Lara v. Astrue</u>, 305 Fed. Appx. 324, 326 (9th Cir.
22 | 2008) ("Reasoning Level 1 jobs are elementary, exemplified by
such tasks as counting cows coming off a truck, and someone able
23 | to perform simple, repetitive tasks is capable of doing work
requiring more rigor and sophistication-in other words, Reasoning
24 | Level 2 jobs."); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th
Cir. 2005) ("[L]evel-two reasoning appears . . . consistent with
25 | . . . Plaintiff's inability to perform more than simple and
repetitive tasks. . . ."); <u>Meissl v. Barnhart</u>, 403 F. Supp. 2d
26 | 981, 984 (C.D. Cal. 2005) (plaintiff who could perform "simple
tasks . . . at a routine pace" could perform jobs with a
27 | reasoning level of 2).

28

1  vocational expert, or (2) by reference to the Medical Vocational

2  Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[11]

3  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Bray, 554 F.3d

4  at 1223 n.4.  The Commissioner "must 'identify specific jobs existing

5  in substantial numbers in the national economy that [the] claimant can

6  perform despite her identified limitations.'"  Meanel v. Apfel, 172

7  F.3d 1111, 1114 (9th Cir. 1999) (quoting Johnson, 60 F.3d at 1432).

9      Hypothetical questions to a vocational expert must consider all

10 of the claimant's limitations, Valentine, 574 F.3d at 690; Thomas v.

11 Barnhart, 278 F.3d 947, 956 (9th Cir. 2002), and "[t]he ALJ's

12 depiction of the claimant's disability must be accurate, detailed, and

13 supported by the medical record."  Tackett, 180 F.3d at 1101.  At

14 plaintiff's most recent administrative hearing, the ALJ asked

15 vocational expert Sandra Fioretti the following hypothetical question:

17      Assume a hypothetical individual the [plaintiff's] age,

18      education, prior work experience.  Assume this person is

19      restricted to a light range of work, lifting and carrying 20

20      pounds occasionally, 10 pounds frequently, standing and

21      walking six hours out of an eight-hour day, no work at

23      [11]  The Grids are guidelines setting forth "the types and
   number of jobs that exist in the national economy for different
24 kinds of claimants.  Each rule defines a vocational profile and
   determines whether sufficient work exists in the national
25 economy.  These rules represent the [Commissioner's]
   determination, arrived at by taking administrative notice of
26 relevant information, that a given number of unskilled jobs exist
   in the national economy that can be performed by persons with
27 each level of residual functional capacity."  Chavez v. Dep't of
   Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996)
28 (citations omitted).

19

1   unprotected heights, no work on dangerous machinery,
2   occasionally climbing, balancing, stooping, kneeling,
3   crouching, and crawling.  The person should work with things
4   rather than with people, and first question is could such a
5   person perform [plaintiff's] past work?

6                        *   *   *

7   Is there other work in the regional or national economy such a
8   person could perform?

9

10  A.R. 1566-67.  In response, the vocational expert testified that
11  plaintiff could perform her past work as a data entry clerk and also
12  could work as a file clerk, which has 3,000 positions regionally and
13  40,000 nationally, an office helper, which has 1,500 positions
14  regionally and 25,000 nationally, and a cleaner in housekeeping, which
15  has 6,000 positions regionally and in excess of 70,000 positions
16  nationally.  A.R. 1567.  The ALJ then asked:

17

18  Hypothetical two, assume a hypothetical individual, same
19  restrictions as in one.  Person is going to be limited to
20  occasional keyboarding, no more than 15 minutes at a time,
21  two to three hours a day total.  And no strenuous torquing
22  or twisting of the wrists.  And standing and walking is
23  limited to four hours a day total, no more than 15 to 30
24  minutes at a time.  And also the person is restricted to
25  routine, repetitive tasks, entry level work.  Are there jobs
26  in the regional or national economy such a person could
27  perform?

28

A.R. 1567-68.  In response, the vocational expert testified that plaintiff could perform the job of office helper, which was eroded by 25 percent for the standing/walking limitation, leaving about 1,200 positions regionally and 19,000 nationally, and small products assembler II, which was eroded by 50 percent, leaving 4,800 positions regionally and in excess of 40,000 nationally.  A.R. 1568.

The plaintiff claims the ALJ's decision must be reversed because the hypothetical questions to the vocational expert were "void of any mention of the mental impairments and limitations" as identified by Drs. Salanga and Gross.  Jt. Stip. at 15:27-18:4, 18:25-19:4.  Since this Court has determined the ALJ properly considered Dr. Salanga's opinion, and that any error in addressing Dr. Gross' opinion was harmless, plaintiff's claim lacks merit.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008); Burch, 400 F.3d at 684.  To the contrary, the vocational expert's testimony provides substantial evidence to support the ALJ's conclusion that plaintiff can perform a significant number of jobs in the national economy.  Valentine, 574 F.3d at 694; Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001)

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: _Dec. 21, 2009_

ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1431.mdo
12/18/09